# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7680 | **DATE** | 5/16/2000 |
| **CASE TITLE** | JAMES NEWSOME vs. BRUCE JAMES,et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff and defendants' motions to reconsider the Court's April 25, 2000 Memorandum Opinion and Order are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| ✓ | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

MAY 18 2000
date docketed

docketing deputy initials

TBK          courtroom deputy's initials

Document Number

150

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

MAY 18 2000

| | | |
|---|---|---|
| JAMES NEWSOME, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 96 C 7680 |
| | ) | Paul E. Plunkett, Senior Judge |
| BRUCE JAMES, JAMES W. ECKNER, | ) | |
| DAVID DIOGUARDI, JAMES MCCABE, | ) | |
| RAYMOND MCNALLY, THEATRICE | ) | |
| PATTERSON, and OLIVIA RUSSELL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On April 25, 2000, the Court issued a Memorandum Opinion and Order ("Order") that denied plaintiff's motion for summary judgment on Count I of his first amended complaint, granted the motion for summary judgment of defendants Eckner, James and Dioguardi and denied the motion for summary judgment of defendants McCabe and McNally. Plaintiff has filed a motion for reconsideration seeking to have the claims asserted against defendant Dioguardi reinstated. Defendants McCabe and McNally have filed a motion for reconsideration seeking dismissal of the malicious prosecution claim asserted against them on the grounds of qualified immunity. For the reasons set forth below, both motions are denied.

### The Legal Standard

Because the parties seek reconsideration of an interlocutory order, their motions are not governed by the Federal Rules of Civil Procedure. Rather, they are addressed to the Court's inherent

150

power to modify orders in a pending case before final judgment. <u>Peterson v. Lindner</u>, 765 F.2d 698, 704 (7th Cir. 1985). Final or not, however, this Court's orders are not "mere first drafts, subject to revision and reconsideration at a litigant's pleasure." <u>Quaker Alloy Casting Co. v. Gulfco Indus., Inc.</u>, 123 F.R.D. 282, 288 (N.D. Ill. 1985). Thus, motions to reconsider are rarely appropriate. In the context of final judgments, our court of appeals has said that motions to reconsider should be presented only when the law or facts change significantly after the issue is presented to the Court, the Court has "patently misunderstood a party," has "made a decision outside the adversarial issues presented" to it, or has "made an error not of reasoning but of apprehension." <u>Bank of Waunakee v. Rochester Cheese Sales</u>, 906 F.2d 1185, 1191 (7th Cir. 1990) (internal quotation marks and citation omitted). Such motions do not allow "a party to undo its own procedural failures, [or] . . . to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." <u>Moro v. Shell Oil Co.</u>, 91 F.3d 872, 876 (7th Cir. 1996) (citation omitted). With these principles in mind, we turn to the parties' motions.

## Discussion

### Plaintiff's Motion

Plaintiff contends that we dismissed his claims against defendant Dioguardi because we "misapprehend[ed]" them. (Pl.'s Mot. Recons. at 1.) Plaintiff seeks to hold Dioguardi liable, he informs us, because Dioguardi "facilitated the preparation of false police reports and provided false testimony contradicting Plaintiff's alibi." (<u>Id.</u> at 2.) Unfortunately, plaintiff did not include the arguments and evidence he now submits in the fact statements or briefs that he submitted in support of his motion for summary judgment or in opposition to defendants' motion. As we said in the

opinion, the only evidence in the summary judgment record with respect to defendant Dioguardi was that he "accompan[ied] McCabe and McNally from Area 2 to the police station at which plaintiff was being held on the Wills robbery." (4/25/00 Mem. Op. & Order at 24.) Absent some compelling explanation for the omission of this evidence, which plaintiff has not provided, we will not revisit our decision to dismiss plaintiff's claims against Dioguardi.

**Defendants' Motion**[1]

Defendants seek reconsideration of the Order to the extent that it denies them qualified immunity from plaintiff's malicious prosecution claim. Our court of appeals has described the analysis of a qualified immunity defense as follows: "When considering a defense of qualified immunity, two questions are pertinent: first, whether the plaintiff has asserted a violation of a constitutional right at all, and second, whether the plaintiff has demonstrated that the applicable constitutional standards were clearly established at the time in question." Erwin v. Daley, 92 F.3d 521, 525 (7th Cir. 1996). Defendants' argument centers on the first question. In essence, they claim that the evidence in this case, at most, supports an inference that defendants arrested plaintiff without probable cause. Because an unconstitutional arrest cannot, by itself, support a section 1983 malicious prosecution claim, defendants contend that they are qualifiedly immune from liability on this claim.

Defendants say that they raised this issue in their summary judgment briefs, but should have "developed [it] at greater length." (Defs.' Mot. Recons. at 2.) While it is true that defendants

---

[1]Because plaintiff did not file his response to defendants' motion by May 12, 2000, as ordered by the Court, we decided the motion without it.

mentioned this aspect of their qualified immunity defense in two of their briefs, devoting three sentences to it in their reply brief and a single paragraph to it in their opposition to plaintiff's motion, they focused on the second step of the analysis, whether the right to sue for malicious prosecution under section 1983 was clearly established in 1979. (See Defs.' Reply Mem. Supp. Mot. Summ. J. at 7; Defs.' Opp'n Pl.'s Mot. Summ. J. at 13.) It was, as we pointed out in the opinion, if the malicious prosecution resulted in a deprivation of "constitutional magnitude," like imprisonment. (4/25/00 Mem. Op. & Order at 23 n.17 (quoting Hampton v. Hanrahan, 600 F.2d 600, 630 (7th Cir. 1979), rev'd in part on other grounds, 446 U.S. 754 (1980))); Albright v. Oliver, 975 F.2d 343, 346 (7th Cir. 1992), aff'd, 510 U.S. 266 (1994) ("Malicious prosecution can result in a person's being thrown in jail to await trial, and incarceration is of course no less a deprivation of liberty within the meaning of the due process clause than exclusion from an occupation."). Defendants did not, however, separately address the first part of the analysis, that is, whether plaintiff stated a constitutional claim, and they seek to do so now.

Needless to say, defendants had ample opportunity to develop this argument in the three briefs they submitted in connection with the motions for summary judgment. Ordinarily, in the face of such an omission, we would deny the motion to reconsider without substantive discussion. However, given defendants' stated intention to file an immediate appeal of this decision, an intention they expressed before the decision was even issued (see Defs.' Mot. Continue Trial Date ¶ 11), we will take this opportunity to apprise the court of appeals of our view of defendants' arguments.

Defendants start with a little history. Twenty years ago, they note, arrest without probable cause was a sufficient basis for a section 1983 malicious prosecution claim. (Defs.' Mot. Recons. at 4-5 (citing Hampton, 600 F.2d at 630).) Today, however, a section 1983 malicious prosecution

claim must be based on a constitutional violation other than unlawful arrest. Sneed v. Rybicki, 146 F.3d 478, 481 (7th Cir. 1998). Though defendants admit that Newsome would have a viable malicious prosecution claim if there were evidence to suggest that they had violated his due process rights by suborning perjury or withholding exculpatory evidence, they claim that no such evidence exists. (Defs.' Mot. Recons. at 5-7.) In reality, viewed favorably to plaintiff, the record supports the inference that defendants did both.

Under Illinois law, a person who "procures or induces" another to commit perjury has suborned perjury. 720 ILL. COMP. STAT. 5/32-3. A person commits perjury "when, under oath or affirmation, . . . he makes a false statement, material to the issue or point in question, which he does not believe to be true." 720 ILL. COMP. STAT. 5/32-2. In his July 29, 1999 affidavit, which we must assume to be true, Rounds states that he was not able independently to identify Newsome as Cohen's killer from the lineup, that he nonetheless testified that Newsome was the killer, and that his testimony was false. (Pl.'s Rule 12(M) Stmt., Ex. G. ¶¶ 2-3, 12-16.) Those facts are sufficient to support the inference that Rounds perjured himself during Newsome's criminal trial. The evidence also supports the inference that defendants "procured or induced," that perjury. In his affidavit, Rounds says that the police "influenced [him] to implicate Mr. Newsome," despite his protestations that he could not identify the killer, and thus, the testimony he gave at Newsome's trial "was the creation of the plain clothes police officers." (Id. ¶ 3.) Finally, because there is no evidence that defendants told the prosecutor or the court before, during or after Newsome's trial that Rounds' identification was coerced or his testimony was false, Rounds' affidavit also supports the inference that defendants failed to disclose exculpatory evidence.

Contrary to defendants' assertion, the information in Rounds' affidavit is sufficient to support an inference of subornation. Though Rounds does not say that he told defendants he would testify falsely, that he discussed his trial testimony with them, or that they threatened or bribed him to testify falsely, such evidence is unnecessary. Rather, the statute only requires evidence that defendants procured or induced Newsome to testify falsely, evidence that is supplied by Rounds' affidavit.

It is also sufficient to support the inference that they withheld evidence. If defendants pressured Rounds into identifying Newsome, and viewed favorably to plaintiff Rounds' affidavit suggests that they did, then, as defendants admit, they had an obligation to disclose that fact to the prosecutor. (Defs.' Mot. Recons. at 7); see United States v. Fairman, 769 F.2d 386, 391-92 (7th Cir. 1985) ("We believe that the purposes of Brady would not be served by allowing material exculpatory evidence to be withheld simply because the police, rather than the prosecutors, are responsible for the nondisclosure."). Even if it is true, defendants' alleged belief that Rounds would disclose "the events that occurred during the lineup – including the defendants' alleged misconduct – to the prosecutors, defense counsel, or the trier of fact" (Defs.' Mot. Recons. at 8), would not absolve them of liability. Because the law holds the State, not the witnesses to a crime, responsible for disclosing exculpatory evidence, defendants' alleged belief that Rounds would report his coercion to the prosecutor is irrelevant.

Defendants' contention that "a careful reading" of Rounds' affidavit destroys any inference of unconstitutional conduct is, to say the least, unpersuasive. (Id. at 5.) It is, to say the most, unsupported by the facts, contrary to the representations they have previously made during this litigation, and worthy of sanctions. Their entire argument rests on one sentence from Rounds' affidavit: "I never told the police I could identify the gunman." (Id. at 6.) That single sentence,

defendants claim, establishes that Rounds did not make any identification from the lineup. Thus, they assert, they cannot be held liable for suborning perjury or withholding exculpatory evidence because they had "every reason to believe that their efforts to influence Rounds had failed" and to conclude that Rounds decided sometime *after* the lineup "that he was able to make an identification after all." (Id.)

Defendants' suggestion that Rounds identified no one from the lineup is sharply contradicted by the rest of his affidavit and the representations that defendants have previously made to this Court. Read favorably to plaintiff, the essence of Rounds' affidavit is that he was unable to identify Newsome as the killer from the lineup, but ultimately did so because of pressure from the police. (Pl.'s Rule 12(M) Stmt., Ex. G ¶¶ 2-3, 12-16.) Read in context, the sentence defendants extract is merely a reiteration of Rounds' inability to independently identify Newsome, not proof that he made no identification at all.

Moreover, until now, defendants have consistently and repeatedly insisted that Rounds did in fact identify Newsome from the lineup. In their answers to Newsome's first amended complaint, McCabe and McNally each "admit[] that Mr. Rounds viewed a lineup and identified Mr. Newsome." (McCabe's Answer First Am. Compl. ¶ 28; McNally's Answer First Am. Compl. ¶ 28.) In the papers they submitted in support of their motion for summary judgment, they reaffirm that admission not less than seven times: (1) "Rounds picked Plaintiff out of the lineup" (Defs.' LR56.1(a)(3) Stmt. ¶ 86); (2) "Rounds reaffirmed his identification of Plaintiff in the lineup" during Newsome's criminal trial (id. ¶ 93); (3) "Anthony Rounds and Josie Nash viewed a lineup and each selected Plaintiff as the man who was in [Cohen's] store" (Defs.' Mem. Supp. Mot. Summ. J. at 3); (4) "Subsequently, a lineup was held and Anthony Rounds identified Plaintiff as the man who had a gun

in Mickey Cohen's store, and who ran out of the store immediately after the shots rang out (id. at 6); (5) "In this case, Josie Nash and Anthony Rounds 'positively and unequivocally identified' Plaintiff James Newsome as the man who shot and killed Mickey Cohen" (id. at 9); (6) "On November 1, 1979, Anthony Rounds selected Plaintiff from a lineup as the man he saw in Mickey Cohen's store" (Defs.' Reply Mem. Supp. Mot. Summ. J. at 1); (7) "In the instant case, Anthony Rounds and Josie Nash viewed a lineup and each selected Plaintiff as the man who was in Mickey Cohen's store" (id. at 3). In light of these representations, defendants' current claim that Rounds did not identify anyone from the lineup strains the Court's credulity and defense counsel's Rule 11 obligations to the breaking point.

Even if we accepted defendants' current interpretation of Rounds' affidavit and ignored their previous representations about his identification, it would not win them qualified immunity from the malicious prosecution claim. If Rounds did not, in fact, identify Newsome from the lineup, defendants violated his due process rights by falsifying evidence and withholding that exculpatory fact from the prosecutor. The November 1, 1979 police report prepared by McCabe and McNally states: "The reporting then arranged for a line-up to be conducted at the 005th District. The witnesses, NASH, ROUNDS, and WILLIAMS were transported to the 005th District and they viewed the line-up. All three positively identified the subject James NEWSOME as being the offender in this case." (Pl.'s Mot. Recons., Ex. E, 11/1/79 police report.[2]) Because there is no evidence that defendants ever alerted the prosecutor to the inaccuracy of that report, they would still

---

[2]Plaintiff submitted an incomplete copy of this report as Exhibit X to his Rule 12(M) Statement.

have to stand trial on the malicious prosecution claim even if Rounds had made no identification from the lineup.

So weak are defendants' arguments for reconsideration that we can only conclude they filed the motion in an effort to extend the trial date for this case. If that was their strategy, it failed. This four-year old case, which is based on events that transpired more than twenty years ago, remains set for trial on May 22, 2000.

## Conclusion

For the reasons stated above, plaintiff and defendants' motions to reconsider the Court's April 25, 2000 Memorandum Opinion and Order are denied.

**ENTER:**

**UNITED STATES DISTRICT JUDGE**

DATED: _May 16, 2000_