# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 96 C 7680 | DATE | 7/25/2000 |
| CASE TITLE | NEWSOME vs. JAMES, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion in limine to prohibit plaintiff from introducing at trial any evidence relating to <u>Jones v. City of Chicago</u>, No. 83 C 2430 is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| ✓ | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 27 2000 date docketed | 167 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JAMES NEWSOME,

    Plaintiff,

v.

BRUCE JAMES, JAMES W. ECKNER,
DAVID DIOGUARDI, JAMES MCCABE,
RAYMOND MCNALLY, THEATRICE
PATTERSON, and OLIVIA RUSSELL,

    Defendants.

No. 96 C 7680
Paul E. Plunkett, Senior Judge

**DOCKETED**

JUL 2 7 2000

## MEMORANDUM OPINION AND ORDER

Defendants McCabe and McNally have presented a motion in limine to exclude evidence relating to their prior misconduct as alleged in Jones v. City of Chicago, No. 83 C 2430. Like Newsome, the plaintiff in Jones alleged that defendants framed him for crimes he did not commit by, among other things, suggesting to witnesses that they should identify him as the perpetrator and preparing false reports. The Jones case was tried by a jury, which found defendants liable for false imprisonment, but not for malicious prosecution or false arrest. Plaintiff contends that evidence of the defendants' misconduct in the Jones case is admissible in this trial under Federal Rule of Evidence ("Rule") 404(b). For the reasons set forth below, we disagree with plaintiff and grant defendants' motion.[1]

---

[1] Defendants' motion also seeks to exclude evidence relating to prior acts of misconduct alleged in Gonzales v. McCabe, No. 79 C 3139. Because plaintiff confined his oral argument on this motion solely to the facts of the Jones case, however, we have assumed that he does not intend to introduce evidence relating to the Gonzales case. In any event, the Gonzales evidence,



## Discussion

Rule 404(b) forbids the admission of evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." Such evidence is admissible, however, as proof of motive, opportunity, intent, identity, plan and the like, if it meets the following conditions:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

FED. R. EVID. 404(b); Treece v. Hochstetler, 213 F.3d 360, 363 (7th Cir. 2000).

Rule 404(b) is something of an anomaly. It recognizes that it is severely prejudicial to allow a jury to hear that a party earlier committed an act similar to the one at issue in the pending lawsuit because of the obvious tendency to conclude: "He did it before, so it is not surprising that he did it again." In this setting, the evidence is only slightly relevant, but highly prejudicial. Yet, if the earlier acts (wrongful though they may be) tend to prove some issue in the case other than propensity, the rule permits its introduction; clearly a risky proposition, but satisfactory if its relevance to the other issue is substantial. As Rule 403 makes clear, relevance wins out over concerns of prejudice unless the prejudice "substantially outweighs" the relevance, a principle our court of appeals emphasized by incorporating it as the fourth element in its Rule 404 test for admissibility of prior bad acts.

Newsome says he seeks to introduce evidence of the defendants' misconduct in the Jones

---

as described by plaintiff, is also inadmissible under Rule 404.

2

case to prove their modus operandi ("MO"). Prior acts evidence may be used to show that defendants have an MO, but only if the MO tends to prove one of the exceptions listed in Rule 404(b). Usually, MO evidence is offered to prove identity. A prosecutor may, for example, introduce evidence that a defendant who denies having robbed Bank A, pleaded guilty to having robbed Bank B in precisely the same fashion, to prove that it was, in fact, the defendant who robbed Bank A. See, e.g., United States v. Robinson, 161 F.3d 463, 466-68 (7th Cir. 1998), cert. denied, 526 U.S. 1078 (1999). Indeed, our court of appeals and the commentators agree that "the 'identity' exception is most applicable to evidence offered as proof of modus operandi." United States v. Connelly, 874 F.2d 412, 416 n.7 (7th Cir. 1989); 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE, § 5244 at 502 (1978) ("[P]roof of modus operandi is best considered in connection with the exception for use of other crimes evidence to prove identity."). But, as plaintiff concedes, identity is not an issue in this case.

He argues, nonetheless, that the MO evidence is admissible "to show Defendants' intent, opportunity, preparation and plan to manufacture inculpatory evidence and ignore exculpatory evidence." (Pl.'s Resp. Defs.' Mot. Limine Exclude Evid. Prior Lawsuits at 3.) MO evidence could, theoretically, be used to prove those things, but only if they were at issue in the case. Intent is certainly not an issue; defendants claim they did not frame Newsome, not that they did so accidentally. Opportunity and preparation are not at issue either. Defendants do not claim that they lacked opportunity to frame Newsome nor is there any suggestion that they prepared in advance to do so. The only 404(b) exception that could possibly be applicable to this case is plan. MO evidence can be used to prove that defendants acted in accordance with a plan, but only if there is some evidence to suggest there actually was an overarching plan. If, for instance, there were

3

evidence that defendants had been reprimanded for solving too few cases, MO evidence might be admissible to prove that defendants framed Newsome in furtherance of a plan to increase their solve rate. Used in that sense, however, the term MO is a misnomer because the prior and current bad acts do not have to be at all similar to be probative of a plan. In our hypothetical, for example, evidence that defendants had framed someone else by planting evidence or falsifying a fingerprint report, neither of which Newsome alleges, would still be admissible under Rule 404(b) as long as there were some indication that defendants committed those acts in furtherance of their plan to clear more cases.

Plaintiff does not contend that defendants engaged in the conduct alleged in this case and that alleged in Jones in furtherance of some larger scheme. Nor does he contend that any other Rule 404(b) exception is actually at issue in this case. Rather, he contends that the MO evidence is admissible as long as it has some bearing on one of the exceptions, whether or not they are relevant to the case.

As far-fetched as it sounds, the Seventh Circuit's opinion in Wilson v. City of Chicago, 6 F.3d 1233 (7th Cir. 1993) seems to support plaintiff's view. Wilson filed suit against the City of Chicago and various police officers alleging that they had violated his civil rights by beating and subjecting him to electroshock until he confessed to the murder of two Chicago police officers. The trial court excluded the testimony of two witnesses, Donald White and Melvin Jones, who would have testified that shortly before Wilson's arrest they were beaten and subjected to electroshock, respectively, by some of the defendants. Id. at 1238. The Seventh Circuit reversed, saying:

> While the judge was far too generous in allowing the defendants to present evidence, he was far too chary in allowing the plaintiff to present evidence. He kept out on grounds of relevance the plainly relevant testimony of Melvin Jones, who claimed to have been subjected to electroshock by Burge and other officers nine days before the interrogation of Wilson. . . . Another excluded plaintiff's witness, Donald White,

4

would have testified that he was arrested as a suspect in the murder of the two police officers shortly before Wilson's arrest and was taken to a police station where he was beaten for several hours by Burge and other defendant officers. Although evidence of prior bad acts is inadmissible to prove a propensity to commit such acts, it is admissible for other purposes, including intent, opportunity, preparation, and plan. Fed. R. Evid. 404(b). Jones's evidence would have served all four of these purposes, White's all but the third (preparation);

Id.

This rather cursory discussion does seem, as plaintiff asserts, to suggest that prior bad acts are admissible under Rule 404(b) if they tend to prove that the defendant intended to commit the acts with which he is charged, had the opportunity to commit them, prepared to commit them, or committed them pursuant to a plan, regardless of whether any of those issues is relevant to the case. Undoubtedly, the underlying facts of the Wilson case would explain this anomalous holding, but they are not set forth in the Seventh Circuit's opinion. There is an opinion from the trial court, however, that sheds some light on the reasoning behind the court of appeals' decision.

According to the Wilson trial judge, plaintiff's theory of the case was that the treatment he received at the hands of the defendants was not a random act of misconduct, but part of their plan to avenge the murders of several of their colleagues. See Wilson v. City of Chicago, 1989 WL 65189, at *4 (N.D. Ill. June 5, 1989). Thus, the testimony of Donald White, who was in custody for killing two police officers when he was beaten by the defendants, and presumably that of Melvin Jones as well, would have been admissible for the purpose of proving that defendants abused Wilson pursuant to their plan to punish cop killers, not for the purpose of showing defendants' propensity to abuse those accused of crimes. We are certain that the reasoning behind the rest of the Seventh Circuit's holding would be just as clear if we had all of the facts of the Wilson case at our disposal. Even without them, however, we are convinced that our court of appeals does not read Rule 404(b)

5

as broadly as Wilson seems to imply. Otherwise, the exceptions, numerous though they may be, would swallow the rule.

Even if the MO evidence were relevant to one of the Rule 404(b) exceptions, it would be admissible only if it bore "a singular strong resemblance to the pattern" of conduct alleged in this case. Treece, 213 F.3d at 363 (internal quotation marks and citation omitted). Moreover, the characteristics of the two sets of acts would have to be "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof." United States v. Shackleford, 738 F.2d 776, 783 (7th Cir. 1984) (internal quotation marks and citation omitted), overruled in part on other grounds, Huddleston v. United States, 485 U.S. 681 (1988). A comparison of the facts of the Jones case to those alleged here reveals that the resemblance between the two sets of acts is not strong enough to support an inference that McCabe and McNally have a distinctive pattern of railroading innocent people.

In 1981, George Jones was arrested for rape, murder and other crimes he had not committed. Eventually, the charges against him were dropped, and he filed a suit pursuant to 42 U.S.C. § 1983. against a number of Chicago police officers, including McCabe and McNally, alleging false arrest, false imprisonment, malicious prosecution, conspiracy and intentional infliction of emotional distress. Jones v. City of Chicago, 856 F.2d 985, 988 (7th Cir. 1988). The case went to trial, and McCabe and McNally were held liable solely for false imprisonment. The jury's verdict form does not indicate the conduct on which the verdict was based, but the district court said the evidence was sufficient for the jury to find that McCabe and McNally:

-conspired to suppress evidence that the eye-witness to the crime was unable to identify a photograph of Jones, and named another man as the attacker;

6

-conspired to suggest to Nancy Coleman, who saw a man in the vicinity of the crime scene, that she identify a picture of George Jones and subsequently identify him in person at a line up;

-conspired to claim falsely that plaintiff made an inculpatory statement at the line-up;

-conspired to concoct a supplementary report that formed the basis for the false arrest, imprisonment and prosecution and that deliberately omitted all the highly exculpatory evidence showing that Jones was the wrong man; and

-conspired to cover up their wrongdoing once it was discovered.

Jones v. City of Chicago, No. 83 C 2430, 1987 WL 16611, at *3 (N.D. Ill. 1987). The Seventh Circuit said that McCabe and McNally:

-along with two other officers went to Jones' high school, sent uniformed officers in to his classroom to arrest Jones, searched his locker, took him to the police station, questioned him, and threatened him with the electric chair if he did not confess.

-took Jones' graduation photo to Nancy Coleman, who, after covering up parts of the face with strips of paper, identified Jones as the man she had seen in the alley behind the crime scene;

-along with other officers prepared a report on the Jones arrest that contained fabricated inculpatory evidence, including a statement that they had shown Nancy Coleman an array of 7 photos, not just Jones' photo, and omitted exculpatory evidence, including the eye-witness' description of the assailant as a gang member (Jones was not), who had lighter skin than the eye-witness (Jones had darker skin), and whose last name was Anderson.

Jones v. City of Chicago, 856 F.2d 985, 989-990 (7th Cir. 1988).

Viewed favorably to plaintiff, the sequence of alleged events in this case is: (1) Cohen is killed; (2) the same day, Anthony Rounds, who now claims he did not see the killer's face, provides a description of Cohen's killer to a police sketch arrest; (3) he and Josie Nash, who was in the store at the time of the murder, allegedly identify someone other than Newsome from police mug books, but their identification is ignored; (4) the next day, some police officers show the sketch to John

7

Williams, who says that it resembles a man he bumped into in the vicinity of Cohen's store shortly before the murder; (5) later that day, a police officer allegedly notices a resemblance between the sketch of the Cohen killer and Newsome, who is in custody on suspicion of robbery; (6) the following day, McCabe and McNally show Williams a photo of Newsome and five other men, who, Williams later says, were not similar to Newsome in height, weight or complexion; (7) the day after that, Williams identifies Newsome from a line-up, as do Josie Nash and Anthony Rounds, allegedly at the prodding of McCabe and McNally.

There are broad similarities between the conduct alleged in the two cases. In both cases, McCabe and McNally allegedly influenced corroborative witnesses to identify the man they had in custody through the use of suggestive photos. In both cases, McCabe and McNally allegedly influenced witnesses to identify from a line-up the man they had in custody. In both cases, McCabe and McNally allegedly omitted exculpatory information from reports they prepared.

But the details of the cases are quite different. The crimes for which each plaintiff was arrested are different: Newsome was arrested for armed robbery and the murder of a grocery store owner, while Jones was arrested for raping and bludgeoning to death a 12-year old girl and beating her ten-year old brother. The characteristics of the plaintiffs are also different. Newsome had a criminal record and was already in custody on suspicion of another crime when he was arrested for the Cohen murder. Jones, a high-school student nicknamed "bookworm," apparently had no police record before his arrest. The defendants' alleged use of suggestive photos was also different. They showed Coleman only one photograph, that of Jones, and permitted her to cover up various parts of the face with strips of paper before she made her identification. Defendants allegedly showed Williams a six-photo array that he later characterized as suggestive. Further, though defendants are

8

alleged to have solidified Coleman's photo identification by encouraging her to pick Jones out of a line-up, there is no evidence to suggest that defendants did the same with Williams. Rather, they are alleged to have encouraged Nash and Rounds, who actually saw the man who shot Cohen, to choose Newsome from the line-up. Finally, in this case, defendants are alleged to have omitted from their reports the exculpatory fact that Nash and Rounds identified Newsome from the line-up at their behest, but they truthfully reported other exculpatory evidence like the fact that Newsome's fingerprints did not match those at the crime scene and nothing that connected him to the crime was found at his home. The report the defendants allegedly prepared in the Jones case omitted all exculpatory information, and contained fabricated inculpatory evidence as well.

Under the circumstances, we cannot say that the characteristics of the two sets of acts are sufficiently idiosyncratic to support an inference of pattern. The alleged facts of these cases do not, for example, suggest that defendants routinely: (1) frame suspected child killers or suspects already in custody; (2) suggest identifications to corroborative witnesses by showing them only one photograph or by showing them suggestive arrays; or (3) prepare reports that contain fabricated inculpatory evidence or those that omit all exculpatory evidence. Rather, the alleged facts of these two cases suggest that defendants misused investigative techniques in different ways, with different kinds of suspects, arrested for different kinds of crimes, once in 1979 and once in 1981. That is not an MO, it is some proof that the defendants are bad police officers who will sometimes railroad suspects when it suits them. This is the kind of character evidence that Rule 404(b) prohibits.

## Conclusion

For the reasons stated above, defendants' motion in limine to prohibit plaintiff from introducing at trial any evidence relating to <u>Jones v. City of Chicago</u>, No. 83 C 2430 is granted.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: July 25, 2000