# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7680 | **DATE** | 10/15/2001 |
| **CASE TITLE** | JAMES NEWSOME vs. BRUCE JAMES, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER: Defendants motion to assert two new affirmative defenses is granted in part and denied in part.**

(11) ■ [For further detail see

| ✓ | No notices required, advised in open court. | | number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | OCT 17 2001 | |
| | Notices mailed by judge's staff. | | date docketed | 199 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | FILED FOR DOCKETING | docketing deputy initials | |
| | Mail AO 450 form. | 01 OCT 17 AM 10: 46 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES NEWSOME,                )
                              )
           Plaintiff,         )
                              )
     v.                       )    No. 96 C 7680
                              )    Paul E. Plunkett, Senior Judge
BRUCE JAMES, et al.,          )
                              )
           Defendants.        )

**DOCKETED**

## MEMORANDUM OPINION AND ORDER

**OCT 1 7 2001**

On July 11, 2001, the Seventh Circuit held that plaintiff's malicious prosecution claim is not a viable constitutional tort that can be redressed under 42 U.S.C. § ("section") 1983. See Newsome v. McCabe, 256 F.3d 747, 750-52 (7th Cir. 2001). The court said, however, that the summary judgment record viewed favorably to plaintiff created a genuine issue for trial on whether the two remaining defendants, McCabe and McNally, violated his due process rights by withholding exculpatory information from the prosecutor. Id. at 752-53. Following that decision, plaintiff filed a second amended complaint and defendants filed a motion to assert two new affirmative defenses. For the reasons set forth below, defendants' motion is granted in part and denied in part.

### Discussion

Before we turn to defendants' motion, there are some preliminary matters that must be addressed. In his second amended complaint, plaintiff renews his allegations that the defendants are sued in both their individual and official capacities. (Second Am. Compl. ¶ 7.) In 1997, we dismissed the official capacity claims plaintiff asserted. Newsome v. James, 968 F. Supp. 1318,

1322 (N.D. Ill. 1997). He cannot revive them now. Any official capacity claims asserted against the defendants in the second amended complaint are, therefore, dismissed.

In 1997, we also dismissed the malicious prosecution claim plaintiff asserted against defendant James because the allegations against him supported only a claim for wrongful arrest. Id. at 1324. Those allegations, which plaintiff has renewed in his second amended complaint, are that James arrested him for the Wills robbery and that he knew or should have known the "charge was bogus." (First Am. Compl. ¶ 18; Second Am. Compl. ¶ 16.) As was true in 1997, the allegations against defendant James in the second amended complaint state only a claim for wrongful arrest. Accordingly, any malicious prosecution or due process claims plaintiff asserts in the second amended complaint against defendant James are dismissed with prejudice.

Plaintiff also asserts in the second amended complaint claims against defendants Eckner and Dioguardi, who we dismissed from the suit last year. (See 4/25/00 Mem. Op. & Order at 23-24.) We entered judgment in their favor on plaintiff's malicious prosecution claims because plaintiff had adduced no evidence to suggest that they had committed that tort. (Id.) The summary judgment record establishes that Eckner's only involvement in the events underlying this suit was noticing a similarity between plaintiff and the composite sketch of the Cohen killer. (See Defs.' LR 56.1(a)(3) Stmt. ¶ 65; Pl.'s LR 56.1(b) Resp. ¶ 65.) That single fact, we said, did not support a malicious prosecution claim against Eckner. It also does not support a due process claim against him. The evidence against Dioguardi is similarly lacking. Though plaintiff alleges that Dioguardi "staged the lineup" with McCabe and McNally (Second Am. Compl. ¶ 25) and perjured himself at plaintiff's trial (id. ¶ 22), the summary judgment record establishes that Dioguardi did nothing more than "accompany McCabe and McNally . . . to the police station at which plaintiff was being held on the

2

Wills robbery." (4/25/00 Mem. Op. & Order at 24 (citing Pl.'s LR 56.1(b) Resp. ¶ 71).)[1] As with Eckner, that single fact cannot support either a malicious prosecution claim or a due process claim against Dioguardi. Because plaintiff has no more factual basis for his due process claims against Eckner and Dioguardi than he had for his malicious prosecution claims against them, any claim of either variety that he asserts against these defendants in the second amended complaint is dismissed with prejudice.

The conspiracy claims against these three defendants are similarly infirm. As we said in our opinion granting summary judgment on the conspiracy count, there is simply "no evidence that Dioguardi, James and Eckner agreed to violate plaintiff's rights." (4/25/00 Mem. Op. & Order at 25.) That evidence has not changed. Thus, the conspiracy claims that plaintiff asserts against these defendants in the second amended complaint are also dismissed.

That leaves defendants McCabe and McNally. Plaintiff asserts a variety of claims against them in the second amended complaint, including claims for false arrest and malicious prosecution. (See Second Am. Compl. ¶ 2 (alleging that defendants "arrest[ed] [him] on a bogus charge" and "caus[ed] the Cook County State's Attorney's Office to charge him with murder without any probable cause"); ¶¶ 45-47 (alleging that defendants maliciously instituted and continued unfounded judicial proceedings against him).) As our court of appeals said, however, the false arrest claims are time-barred and malicious prosecution is not a viable constitutional tort. Newsome, 256 F.3d at 749, 751. Thus, any such claims plaintiff attempted to assert against McCabe and McNally are dismissed.

---

[1]Even if there were evidence that Dioguardi had committed perjury, it would not further plaintiff's cause. As discussed more fully below, Dioguardi has absolute witness immunity from section 1983 claims arising out of testimony given at trial, even if that testimony was perjurious. See Briscoe v. LaHue, 460 U.S. 325, 326 (1983).

3

Finally, in Count II of his second amended complaint, plaintiff says he "seeks damages for conspiracy to commit the constitutional violations alleged in Count I." (Second Am. Compl. ¶ 2.) Defendants cannot, however, be held liable for conspiring "to commit an act that [they] may perform with impunity." House v. Belford, 956 F.2d 711, 720 (7th Cir. 1992); see Old Sec. Life Ins. Co. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago, 740 F.2d 1384, 1397 (7th Cir. 1984) ("Civil conspiracy is an agreement of two or more people to commit *an unlawful act* . . . .") (emphasis added). Because McCabe and McNally are not liable for false arrest or malicious prosecution, they are also not liable for conspiring to commit those acts.

We turn now to defendants' motion. Plaintiff contends that the affirmative defenses defendants now seek to assert, prosecutorial and witness immunity, have been available to them since plaintiff filed his first amended complaint in February 1997. Because they failed to assert them until the eve of trial, plaintiff says, defendants have waived them.

The Court disagrees. Though the facts plaintiff alleged in his first amended complaint – that defendants failed to produce material exculpatory evidence to the prosecutor, testified perjuriously and suborned perjury – are the same as those alleged in his second amended complaint, the theory of his case is different. Initially, plaintiff was not seeking to hold defendants liable for the acts of concealing evidence or perjury; he sought to hold them liable for maliciously prosecuting him by concealing evidence and testifying falsely. Once the Seventh Circuit scotched plaintiff's malicious prosecution claims, however, plaintiff's only recourse was to pursue defendants for the underlying acts. It was only then that the kind of prosecutorial immunity and witness immunity that defendants now seek became even arguably relevant. See Newsome, 968 F. Supp. at 1325 (noting that defense of absolute immunity does not apply to malicious prosecution claim). Of course, the change in

4

theory was not plaintiff's idea. But that is beside the point. The fact is that the theory changed and equity requires that defendants be allowed to assert any defenses that they may have to the new incarnation of plaintiff's claims. See Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000) (noting that it would be unfair to allow "plaintiffs to change their theory of the case while simultaneously locking defendants into their original pleading"), cert. denied, 121 S. Ct. 2214 (2001).

Even if these defenses had been available to defendants earlier, we still would not deem them to be waived. Ordinarily, failure to plead an affirmative defense results in waiver. DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 334 (7th Cir. 1987). "But when parties argue an affirmative defense in the district court, technical failure to plead the defense is not fatal." Id.; see Vaughn v. King, 167 F.3d 347, 352 (7th Cir. 1999) (defense not waived though first asserted in pretrial order); Dresser Indus., Inc. v. Pyrrhus AG, 936 F.2d 921, 928 (7th Cir. 1991) (defense raised for first time in reply brief in support of motion for judgment on the pleadings not waived because plaintiff "received a full opportunity to respond" to it). Because plaintiff has had ample opportunity to respond to these defenses, we would not deem them to be waived even if defendants could have asserted them earlier.

We turn now to the merits of defendants' motion. In the second amended complaint, plaintiff seeks to hold McCabe and McNally liable for violating his due process rights by "testifying perjuriously" during his criminal trial, for inducing others to do so and for conspiring to do so. (Second Am. Compl. ¶ 2.) Defendants contend that the doctrine of absolute witness immunity shields them from these claims.

Plaintiff says that we have already decided this issue against defendants. Plaintiff is mistaken. In 1997, we said defendants could not assert this defense to plaintiff's malicious

5

prosecution claims. Newsome, 968 F. Supp. at 1325. We also said, however, that defendants could revisit the issue if it appeared that plaintiff was attempting to hold them liable solely for the act of testifying perjuriously. Id. That is precisely what plaintiff now seeks to do. Defendants are not, therefore, barred by the law of the case from asserting this defense to the second amended complaint.

Moreover, the Court agrees with defendants that absolute witness immunity protects them from these claims. In Briscoe v. La Hue, 460 U.S. 325 (1983), the Supreme Court held that section 1983 does not authorize "a convicted person to assert a claim for damages against a police officer for giving perjured testimony at his criminal trial." Id. at 326. That immunity, the Seventh Circuit has held, extends to claims of conspiracy to present perjured testimony. House, 956 F.2d at 720 ("[W]e fail to understand how a witness can be held liable under § 1983 for conspiring to commit an act for which he is protected from § 1983 liability by absolute immunity."). Thus, any due process claims plaintiff asserts against McCabe and McNally based on their alleged perjury or their alleged conspiracy to present their own perjured testimony are dismissed.

Even if Briscoe and House bar his perjury and conspiracy to present perjured testimony claims, plaintiff contends that they do not bar his claims based on defendants' alleged subornation of perjury and their alleged conspiracy to suborn perjury. Unlike plaintiff, the Court does not see a distinction between suborning perjury and conspiring to present perjured testimony. One suborns perjury by inducing another to give testimony he knows to be false. In other words, one is guilty of subornation only if he secures the perjurer's agreement to present false testimony. Another name for such an agreement, of course, is a conspiracy. Thus, subornation of perjury and conspiracy to present perjured testimony appear to be two different names for the same claim. To the extent there is a difference between the two, it is not substantial enough to warrant treating them differently for

6

immunity purposes. See Jones v. Cannon, 174 F.3d 1271, 1289 (10th Cir. 1999) (following the reasoning of Briscoe and House and applying absolute witness immunity to section 1983 claims based on subornation of perjury). Accordingly, any due process claims plaintiff asserts against McCabe and McNally based on their alleged subornation of perjury or their alleged conspiracy to suborn perjury are also dismissed.

Plaintiff's remaining claims against McCabe and McNally are that: (1) they violated his due process rights by withholding material exculpatory evidence from the prosecutor; and (2) they conspired to do the same. Though defendants have not cited, and we could not find, any case in which police officers accused of this kind of due process violation were granted absolute immunity, defendants contend that it should be extended to them. If they, like prosecutors, have a duty to produce material exculpatory evidence, defendants argue, then they, like prosecutors, should be immune from suit for their failure to do so. In defendants' words: "If police officers are going to be held to the same Brady obligations as prosecutors, then, under the functional approach [of Buckley v. Fitzsimmons, 509 U.S. 259 (1993)], they should be entitled to the same absolute immunity for this clearly prosecutorial function." (Defs.' Mem. Supp. Add'l Affirmative Defenses at 2.)

In reality, however, police officers are not held to the same standard as prosecutors. Prosecutors violate due process if they fail to tender to the defense, upon request, all material exculpatory or impeaching evidence. Brady v. Maryland, 373 U.S. 83, 87 (1963). This is a strict liability standard; if material exculpatory evidence is not produced, Brady is violated regardless of the prosecutor's intent. Id. To satisfy their obligation, prosecutors must "ask such lawyer's questions as whether an item of evidence has 'exculpatory' or 'impeachment' value and whether

such evidence is 'material.'" Jean v. Collins, 221 F.3d 656, 660 (4th Cir. 2000), cert. denied, 531 U.S. 1076 (2001). Police officers, by contrast, violate due process only if they deliberately withhold or conceal exculpatory evidence from the prosecutor. Id. at 663; Newsome v. McCabe, 260 F.3d 824, 825 (7th Cir. 2001). Unlike prosecutors, they are not accountable for failing to appreciate the ramifications of evidence they do not produce. Thus, police officers do not have to make lawyer-like determinations about whether evidence is material or impeaching to comply with their due process obligations. They simply have to refrain from concealing exculpatory evidence. Given the limited scope of their obligation – to refrain from intentional misconduct – police officers need not exercise prosecutorial discretion to comply with it.

Defendants' quest for absolute immunity also runs head long into decades of Supreme Court precedent. The Supreme Court has consistently interpreted section 1983 as providing absolute immunity only "to [those] functions intimately associated with the *judicial* phase of the criminal process." Malley v Briggs, 475 U.S. 335, 342 (1986) (internal quotation marks and citations omitted) (emphasis in original). Thus, prosecutors are given absolute immunity for their acts in initiating prosecutions and presenting evidence at trial, Imbler v. Pachtman, 424 U.S. 409, 431 (1976) and judges are given absolute immunity for "acts committed within their judicial jurisdiction," Pierson v. Ray, 386 U.S. 547, 554-55 (1967). But police officers, whose functions are further removed from the judicial process, are generally accorded only qualified immunity. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982) ("For executive officials in general . . . our cases make plain that qualified immunity represents the norm."); Malley, 475 U.S. at 344 (police officers have only qualified immunity from section 1983 suits arising from the act of requesting an arrest warrant); Pierson, 386 U.S. at 555 (noting that "[t]he common law . . . never granted police officers

8

an absolute and unqualified immunity" and holding that police officers are only qualifiedly immune from section 1983 false arrest claims); cf. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (prosecutors who "perform[] the investigative functions normally performed by a detective or police officer" are entitled only to qualified immunity).

Of course, a departure from the norm would be appropriate if there were compelling policy reasons to justify it. See Butz v. Economu, 438 U.S. 478, 506 (1978) (those who "seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope"); Auriemma v. Montgomery, 860 F.2d 273, 275 (7th Cir. 1988) (court must consider whether performance of governmental function at issue "poses special risks of vexatious litigation" and "whether sufficient safeguards exist to prevent abuses of power" to determine whether absolute immunity is appropriate). In this case, however, no such reasons exist. Absolute immunity is not necessary to protect the personal or professional interests of police officers because they are sufficiently safeguarded by the deliberate concealment standard of liability. Because they are not accountable for negligence, they need not be consumed by evidence production decisions, to the detriment of their other duties, or fear that each decision will expose them to harassing litigation. Moreover, denying absolute immunity will better serve the interests of the justice system as a whole. Absent section 1983 liability, the only consequence of this kind of misconduct is the reversal of a conviction, a far weaker deterrent to police misconduct than the threat of a damage award. In addition, because it will discourage this sort of behavior, denying absolute immunity will aid in the truth-seeking process, reduce the frequency of wrongful convictions and foster public confidence in the outcomes of criminal trials. In short, no compelling policy considerations militate in favor of shielding police officers from section 1983 liability for

deliberately concealing exculpatory evidence. McCabe and McNally's motion to assert an absolute prosecutorial immunity affirmative defense is, therefore, denied.

## Conclusion

For the reasons stated above: (1) the claims plaintiff asserts in the second amended complaint against defendants James, Eckner and Dioguardi are dismissed with prejudice; (2) the section 1983 claims for false arrest and malicious prosecution, and for conspiring to commit those acts, that plaintiff asserts in the second amended complaint against defendants McCabe and McNally are dismissed with prejudice; (3) McCabe and McNally's motion to assert the affirmative defense of absolute witness immunity is granted and plaintiff's section 1983 due process claims grounded in their alleged perjury, their alleged conspiracy to present their own perjured testimony, their alleged subornation of perjury and their alleged conspiracy to suborn perjury are dismissed with prejudice; (4) McCabe and McNally's motion to assert the affirmative defense of absolute prosecutorial immunity to plaintiff's section 1983 due process claims grounded in their alleged concealment of exculpatory evidence is denied.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: OCT 1 5 2001