# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7680 | **DATE** | 5/9/2002 |
| **CASE TITLE** | JAMES NEWSOME vs. JAMES MCCABE,et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: plaintiff's motion for an award of attorneys' fees and expenses and his bill of costs are granted in part and denied in part. Judgment will be entered in plaintiff's favor on the fee petition in the amount of $833,777.02 and costs will be taxed in the amount of $12,382.75. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | **Document Number** |
| | No notices required. | | |
| | Notices mailed by judge's staff. | MAY 10 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

MAY 1 0 2002

JAMES NEWSOME,         )
                      )
        Plaintiff,     )
                      )
v.                     )   No. 96 C 7680
                      )   Paul E. Plunkett, Senior Judge
JAMES MCCABE and RAYMOND   )
MCNALLY,            )
                      )
        Defendants.   )

## MEMORANDUM OPINION AND ORDER

The case is before the Court on plaintiff's motion for attorneys' fees and expenses and his bill of costs. For the reasons set forth below, both the motion and the bill of costs are granted in part and denied in part.

### Discussion

In civil rights cases, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. There is no dispute that plaintiff prevailed in this suit. Our task, then, is to determine what "a reasonable attorney's fee" is in this case. "The most useful starting point for determining the amount of a reasonable fee," the Supreme Court tells us, "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." Spegon v. Catholic Bishop of Chicago,175 F.3d 544, 550 (7th Cir. 1999).

Plaintiff seeks to recover fees expended on his behalf in this litigation by: Locke Bowman and Jean Snyder of the MacArthur Justice Center, Brian Reichel of the Law Offices of Brian T. Reichel, David Odom and his colleagues at David T. Odom & Associates ("the Odom firm") and Philip Beck, Sean Gallagher and their colleagues at Bartlit Beck Herman Palenchar & Scott ("Bartlit Beck"). Defendants and intervenor (collectively, "defendants") make a general challenge to the reasonableness of the hours expended by all of plaintiff's attorneys[1] and specific challenges to the reasonableness of the hourly rates charged by Messrs. Beck, Odom and Gallagher.

Defendants' first challenge is to the fees charged by Mr. Reichel which, they claim, are excessive and redundant. The Court agrees. Mr. Reichel is a Colorado attorney. Though he filed an appearance in this case, Mr. Reichel did not conduct discovery, prepare the summary judgment motions or participate in the trial. Because plaintiff has not explained what role Mr. Reichel played in this case or demonstrated that his services were necessary, none of his fees or expenses are recoverable.

Defendants also challenge some of the hours billed by Mr. Bowman. First, they argue that the time he billed for work on Newsome's FOIA and Illinois Court of Claims matters are not recoverable. The Court agrees. Section 1988 permits plaintiff to recover fees expended in certain civil rights actions. See 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . , the court, in its discretion, may

---

[1] Though defendants contend that plaintiff's lawyers, particularly those at Barlit Beck and the Odom firm, billed far too much time on this case, they make very few objections to specific time entries. (See Defs. & Intervenor's Resp. Pl.'s Mot. Att'ys' Fees & Costs at 6-11.) Rather, they offered a few "representative examples" of excessive billing because, defendants said, "plaintiff's [counsel's] excessive billing entries [were] too numerous to recount and contest." (See id. at 7.) Having failed to lodge any specific objections to the vast majority of plaintiff's counsel's time entries, defendants have waived them.

allow the prevailing party . . . a reasonable attorney's fee . . . ."). It does not permit Newsome to recover fees expended in actions to enforce any other statutes or rights. Because plaintiff has not demonstrated that Mr. Bowman's work on the FOIA and Court of Claims matters was a necessary predicate to this action, he may not recover for it.[2]

Defendants also contend that Mr. Bowman spent an excessive amount of time preparing the complaint and plaintiff's response to defendant's motion to dismiss. Once again, the Court agrees. In total, Mr. Bowman billed 37.75 hours to preparing the complaint,[3] a task that should have taken no more than 20 hours, and 50.75 hours to preparing the response to defendants' motion to dismiss,[4] a task that should have taken no more than 25 hours. Mr. Bowman's hours will be reduced accordingly.

---

[2] For this reason, plaintiff may not recover for the work Mr. Bowman billed: (1) from February 28, 1996 through May 30, 1996; (2) on August 16, 1996; (3) on August 19, 1996 for telephone calls to Matt Finnel and Tom Decker; (4) from August 23, 1996 through October 19, 1996; (5) on November 5, 1996 for a conference with Superintendent Rodriguez, Donald Zoufal and Norval Morris; (6) from January 6, 1997 through January 17, 1997; (7) from January 26, 1997 through February 4, 1997; (8) on March 17, 1997; (9) on April 1, 1997; (10) on May 5 and 8, 1997; (11) on May 20, 1997 for drafting a stipulation and proposed order for the court of claims and for a telephone call to Paul Cho; (12) on May 21, 1997 for telephone calls to Paul Cho, Gofen and Morris; (13) from May 22, 1997 through June 25, 1997; (14) on July 18, 1997 for telephone calls to Tom Decker; (15) on October 31, 1997 for telephone calls to lawyers regarding court of claims issues; and (16) on November 3, 1997 for legal research on Court of Claims issues.

[3] This figure represents Mr. Bowman's time entries for July 11, 31, 1996, August 5, 7, 14, 19 (time billed for drafting complaint), 1996 and November 1, 12-15, 17-18, 20-21, 1996.

[4] This figure represents Mr. Bowman's time entries for April 28, 29 (entry for student assignments for response to motion to dismiss) and May 12, 15-19, 20 (entry for revisions to response to motion to dismiss), 21 (entry for review and revision of response to motion to dismiss), 1997.

Moreover, a number of Mr. Bowman's time entries are too vague to enable us to determine whether he was working on this case and, if so, whether the work was necessary. Because plaintiff has not provided any explanation of these undecipherable entries, he may not recover for them.[5]

The remainder of Mr. Bowman's hours are reasonable. Defendants do not challenge his $250.00 per hour billing rate and the Court finds that it is reasonable. Accordingly, plaintiff may recover a total of $47,593.75 for 190.375 hours of Mr. Bowman's work on this case.

Defendants also challenge some of Ms. Snyder's time entries. First, they say that the 100 hours she billed on August 11, 1998 to "Need to put in James dep. Whole bunch of stuff after Tosello" should be disallowed. The Court agrees. That entry, which looks more like a notation to complete the billing statement than an actual record of time billed, is too vague to be recoverable. Also too vague is her entry for July 28, 1997, which states in its entirety: "review and analyze; work on chronology." Further, it appears that Ms. Snyder billed twice for reviewing Fifth Amendment research on February 3, 1998, and thus, one of those entries will be deleted. Finally, the 7.25 hours Ms. Snyder billed on June 30, 1997 for reviewing documents and cases "preparatory to filing a response to motion to dismiss," will also be deleted. Given the amount of time Mr. Bowman spent preparing that response, there was no need for Ms. Snyder to work on it as well.

The remainder of Ms. Snyder's hours are reasonable. Defendants do not challenge her $250.00 per hour billing rate and the Court finds that it is reasonable. Accordingly, plaintiff may recover a total of $50,562.50 for 202.25 hours of Ms. Snyder's work on this case.

---

[5]For this reason, plaintiff may not recover for Mr. Bowman's work on: June 12, 17, 1996, July 12, 1996, August 15, 1996, December 2, 9, 1996, January 2, 1997, July 18, 1997, November 3 (entry for conference with JMS, Jones and Decker), 14, 1997, December 1, 1997 (entry for telephone calls to locate Addison) and September 5, 2001.

-4-

Plaintiff also seeks to recover fees expended by Mr. Odom, Ms. Gibbs-Cunningham and Ms. Tucker of the Odom firm. We will start with Mr. Odom. He billed 370.26 hours, in whole or in part,[6] to conferences or other work involving Mr. Reichel, Mr. Hall or Mr. Patterson, lawyers whose time the Court has determined was not reasonably expended on this case. (See supra at 2; infra at 9.) Those entries will, therefore, be deleted.[7] Moreover, Mr. Odom billed 422.5 hours, in whole or in part, to such vague descriptions as "worked on trial house," "teleconference with J. Newsome," "interviewed witnesses" and "prepared for trial." We cannot divine from these descriptions what work was actually performed or whether the time spent on it was reasonable. Consequently, those entries will be deleted.[8] In addition, on October 18, 19 and 22-26, days on which the trial was held, Mr. Odom billed 81.25 hours to "preparation and trial." Because we do not know what work "preparation" entails, and none of the trial days exceeded eight hours, each of these entries will be reduced to eight hours.

Mr. Odom's time descriptions also indicate that he billed 64 hours for performing tasks like shipping boxes, assembling pleadings binders, and duplicating and serving documents. Because

---

[6]The Odom firm lawyers did not bill separately for the tasks they performed, but aggregated their time into a daily total. As a result, any time entry that describes both compensable and noncompensable work must be rejected.

[7]Those entries are: February 27, 1999, March 1-2, 5, 9, 16, 24, 31, 1999, April 2, 8, 13, 26, 29, 1999, July 28-30, 1999, August 2-5, 1999, August 9-11, 30, 1999, September 1-2, 8-9, 23-24, 28, 1999, October 4, 7, 13-14, 16, 19-20, 1999, November 9, 11, 15-16, 18, 23-26, 1999, December 3, 7, 23, 1999, January 10, 24, 2000, February 7, 14, 16, 23, 2000, March 24, 2000, April 3, 10, 20, 26, 2000, May 8, 18, 27, 2000, September 25, 2000 and December 6, 12, 2001.

[8]Those entries are: May 18-19, 1999, June 4, 17, 19, 23-25, 1999, July 2, 8, 15, 1999, August 13, 1999, September 17, 1999, February 1, 2000, March 28, 2000, April 13, 18, 2000, May 3, 10, 13, 21, 29-30, 2000, June 6, 8, 13, 17, 26, 28, 30, 2000, July 5-7, 16, 18, 20, 24-27, 2000, August 1, 28, 2000, October 3, 11, 13, 24, 30, 2000, November 7, 10, 21, 27, 30, 2000, December 6, 18, 21, 28, 2000, May 10, 22-23, 29, 31, 2001, June 4, 7, 19, 27, 30, 2001, July 14, 17, 25, 27, 31, 2001, August 1, 7, 17, 2001, September 4-6, 10-13, 18-21, 24-29, 2001 and October 3, 5, 8-10, 12-17, 20-21, 27-28, 2001.

those tasks should have been completed by clerical staff, not by a lawyer charging nearly $300.00 per hour, those entries will be deleted.[9]  Further, as defendants point out, there is no indication that Mr. Odom's hours for November 16-17, 1999[10] have been reduced to reflect their previous payment for a portion of his work on those days.  Consequently, Mr. Odom's time entries for November 16 and 17, 1999 will be reduced by .5 and 1.75 hours, respectively.  Moreover, Mr. Odom billed nearly 100 hours from August 8, 2000 through September 24, 2000 to researching and drafting plaintiff's appellate brief and preparing for the oral argument.  Given the fact that he had briefed the qualified immunity issue twice before and divided up the appellate work with Bartlit Beck, it should have taken Mr. Odom no more than 50 hours to accomplish those tasks.  His time entries for those days, therefore, will be halved.  Finally, Mr. Odom's billings must be discounted for his late arrival in the case.  He spent, for example, 359.25 hours preparing the papers plaintiff submitted in support of his motion for summary judgment and in opposition to defendants' motion.  If Mr. Odom had filed the complaint and conducted all of the fact discovery in the case, it would have taken him no more than half of that time to marshal the law and facts that supported plaintiff's position.  Accordingly, Mr. Odom's summary judgment billings will be reduced by 50%.[11]

---

[9]Those entries are:  March 30, 1999, June 9-10, 1999, August 16, 1999, January 14, 2000, February 22, 2000, March 1, 10, 2000, April 7, 2000 and December 7, 2001.

[10]Defendants also paid Mr. Odom for three hours of work on November 18 and 24, 1999. Those time entries are not included in this discussion because they also describe work involving Mr. Reichel and, thus, have been deleted in their entirety.

[11]Those entries are:  July 19-20, 25, 1999, December 2, 6, 8-10, 13-15, 20-22, 27-29, 1999, January 3-7, 11-13, 17-22, 26, 31, 2000 and February 2-6, 8-11, 17-18, 20-21, 24-25, 28-29, 2000.

The remainder of Mr. Odom's billings are reasonable.[12] After making the necessary adjustments, plaintiff may recover for 1470 hours of Mr. Odom's work: 830.5 hours in 1999, 450.615 hours in 2000 and 188.5 hours in 2001.

Ms. Gibbs-Cunningham's billings are also flawed. Like Mr. Odom, Ms. Gibbs-Cunningham billed a number of hours, in whole or in part, to tasks like organizing files and labeling and shipping boxes, work that should have been performed by clerical staff. Consequently, those entries will be deleted.[13] We will also delete all entries for work involving Mr. Reichel, those that insufficiently describe the work that was performed and those that describe work that is redundant or unnecessary.[14] Finally, we will reduce by half Ms. Gibbs-Cunningham's billings for summarizing the case file and working on the summary judgment motions, to account for the inefficiency inherent in joining a case that has been in progress for more than two years.[15] The remaining 379.29 of Ms. Gibbs-Cunningham's hours are reasonable. Plaintiff may, therefore, recover for them.

We turn now to Ms. Tucker's billings. Like her colleagues, Ms. Tucker billed time, in whole or in part, to various clerical tasks like assembling pleadings binders, copying documents and

---

[12]We are not persuaded that Mr. Odom over billed for his work on December 14, 2001 and billed for work performed by Mr. Gallagher on the response to defendants' motion for a continuance, as defendants contend. The 100 hour entry for December 14, 2001 was, at least on the Court's copy, corrected to 1 hour, a reasonable amount of time for the tasks described. Moreover, the time entries with respect to the motion for a continuance indicate that Mr. Odom and Mr. Gallagher divided the work: Mr. Odom did the research and Mr. Gallagher did the drafting.

[13]Those entries are: March 2, 29-30, 1999, April 20, 27, 1999, June 14-15, 1999, August 3, 1999, September 1-3, 1999 and October 15, 1999.

[14]Those entries are: April 21, 28, 1999, May 4, 10, 13, 18-21, 1999, June 7-8, 11, 21, 23-25, 28, 1999, July 15-16, 28, 1999, August 4, 9, 11, 16, 1999, September 9, 13-15, 1999 and October 5-6, 14, 20-21, 1999.

[15]Those entries are: March 3, 9, 11-12, 16-17, 31, 1999, April 1, 5-6, 8-9, 19, 22, 26, 1999, May 6-7, 11-12, 14, 1999, June 30, 1999, July 13-14, 19-23, 29-30, 1999, August 2, 20, 1999 and September 17, 1999.

organizing files. Her time entries for those tasks will be deleted.[16] Moreover, Ms. Tucker billed a number of hours for observing interviews, meetings or hearings handled by others. Because plaintiff has not demonstrated that it was necessary for her to attend these events, he may not recover the fees she billed for doing so.[17] Ms. Tucker also billed a number of hours to research or other work that was also performed by Ms. Gibbs-Cunningham or Mr. Odom. Accordingly, those entries will be deleted.[18] We will also delete all entries for work involving Mr. Reichel and those with vague descriptions of the work performed.[19] Finally, Ms. Tucker billed 66 hours for work on the appeal. Only 10 of those hours, which she billed for preparing case summaries for Mr. Odom, were necessary to the case. Accordingly, the other 56 hours of Ms. Tucker's appeal work will be deleted.[20] The remaining 115.75 hours billed by Ms. Tucker, 96.5 in 1999 and 19.25 in 2000 and 2001, are reasonable and recoverable.

Plaintiff also seeks to recover the fees expended by Mr. Beck, Mr. Gallagher and their colleagues at Barlit Beck, the last law firm to join this case. The Bartlit Beck billing statement reveals: (1) some redundancies due to the firm's case-staffing decisions; (2) some inefficiencies due to the firm's late arrival in the case; and (3) some duplication of effort due to defendants' interlocutory appeal. The costs that fall into the first two categories are plaintiff's responsibility. The costs that fall into the third category, however, are defendants' responsibility.

---

[16]Those entries are: June 9-10, 14-16, 1999, July 21, 1999 and August 4, 12, 1999.

[17]Those entries are: June 18, 1999, July 1-2, 28-29, 1999, August 11, 16-17, 1999, September 25, 2000 and May 9, 2001.

[18]Those entries are: June 21-22, 24, 1999 and July 13-16, 20, 1999.

[19]Those entries are: June 4, 23 and 26, 1999, July 7, 1999 and August 2, 3, 9, 10, 1999.

[20]Those entries are: August 17-18, 21, 23-25, 2000 and September 21-22, 24, 2000.

With respect to the first category, the Barlit Beck billing statements show that more attorneys were assigned to this case than was necessary. It appears, for example, that Jeffrey Hall, a Bartlit Beck partner, and Chaka Patterson, a firm associate, worked on the case when it first arrived at the firm. They did not remain involved in the case, however, and the work they performed was duplicated by other attorneys. Accordingly, plaintiff may not recover for any of Mr. Hall's or Mr. Patterson's work. Similarly, most of the hours billed by Mr. Polovin, a law clerk, must be deleted because his efforts were duplicated by others, the work he performed should have been assigned to clerical staff, or the descriptions of the work he performed are too vague. Consequently, plaintiff may only recover for the 15 hours Mr. Polovin spent: (1) researching on June 28, 2000 and July 21, 2000; and (2) drafting plaintiff's opposition to the motion to bifurcate on June 29, 2000.

For the same reasons, much of firm associate Andrew DeVooght's time is not compensable. Mr. DeVooght performed 19.25 hours of work that was necessary to the case on October 17, 2001 (entries for preparation of deposition designations), October 21, 2001, October 22, 2001 (entry for drafting chart of witness statements), October 25, 2001 (entry for research) and October 28, 2001. Plaintiff may not, however, recover for the rest of the hours billed by Mr. DeVooght. Moreover, the time charged by firm associate Steven Nachtwey on October 22, 2001 and by firm associate Brian Swanson on October 29, 2001 are duplicative of other attorneys' compensable work and, thus, are not recoverable. Finally, Sidney Herman, a firm partner, billed 1.75 hours on October 22, 2001 to "Trial. Coordinate research on key issues" and 4.00 hours on October 25, 2001 to "Trial press logistics." Plaintiff has not explained why these services were necessary or why they had to be performed by a person who charges $490.00 per hour. He may not, therefore, recover for them.

That brings us to Mr. Beck and Mr. Gallagher, the attorneys by whom the bulk of the Bartlit Beck fees were billed. For a six-day period in mid-June 2000, Mr. Beck billed 24.75 hours to:

"Prepare for and attend motion for stay. Trial preparation. Review criminal trial transcript to prepare cross of police officers." Moreover, on June 28, 2000, he billed 3.50 hours to: "Prepare for and attend hearing on motion for stay. Review expert reports and expert depositions to prepare for direct and cross examination." The hearing on the motion for a stay did not span seven days nor should it have required seven days' preparation. Because we cannot determine from these descriptions how much time he devoted to the stay motion, as opposed to the other tasks listed, all of these entries will be deleted. Moreover, from October 1, 2001 to October 17, 2001, Mr. Beck billed 85.25 hours either to "Prepare for trial" or to "Trial preparation." Because we cannot determine from those descriptions what work Mr. Beck actually performed or whether the time he spent on it was reasonable, plaintiff may not recover for his work on those days. In addition, from October 18, 2001 through October 29, 2001, Mr. Beck billed 120 hours to "Trial." Given the fact that the trial was conducted on only eight of those days and each trial day was no longer than eight hours, the "Trial" time description plainly encompasses more than Mr. Beck's trial work. Without an explanation of the additional work, however, plaintiff may not recover for it. Accordingly, plaintiff may only recover eight hours for Mr. Beck's "Trial" work on October 18, 19 and 22-26, 2001, the days on which the trial was held, and may recover nothing for his "Trial" work on October 20, 21, 27 and 28, 2001, which were not trial days. Finally, Mr. Beck spent 418.25 hours from March 1, 2000 until July 28, 2000 reviewing case materials and preparing for trial. Any trial lawyer would have had to perform the same review, but one who had been involved in the case from its inception would have spent less time doing so. Given the fact that Mr. Beck was lead trial counsel, a position that requires detailed knowledge of all aspects of the case, reducing his trial preparation hours by one-third, to 278.83, is sufficient to account for his lack of familiarity with the record. The

remainder of Mr. Beck's hours are reasonable. Thus, plaintiff may recover for a total of 346 hours of Mr. Beck's work.

We turn now to Mr. Gallagher's billings. Mr. Gallagher billed 74 hours to preparing plaintiff's appellate brief. Given the fact that he divided the work with Mr. Odom, that is twice the amount of time he should have spent. Accordingly, Mr. Gallagher's time entries for work on the appeal will be halved.[21] Moreover, Mr. Gallagher billed a number of hours, in whole or in part, to research or other pretrial tasks that had already been done by the Odom firm. Plaintiff may not, therefore, recover his fees for that work.[22] In addition, Mr. Gallagher billed time on April 5, 2000 to a clerical task and on May 11, 2000 and July 5, 2000 for unnecessary conferences with Messrs. Reichel and Polovin. Those entries, therefore, will be deleted. Mr. Gallagher also billed a number of hours to telephone conferences or to generically described trial preparation activities. Because those descriptions are too vague to support a fee award, they will be deleted or, if they are for trial days, reduced to eight hours.[23] Finally, like Mr. Beck, Mr. Gallagher spent a substantial number of hours educating himself about the case when he first started to work on it. Any lawyer preparing for

---

[21]Those entries are from July 31, 2000 through February 5, 2001.

[22]Those entries are:  March 29, 2000 (entry for research on causes of action), April 4 (entry for research), 6 (entry for research), 2000, May 1 (entry for designation of trial exhibits), 2 (entry for research), 5 (entry for research), 9 (entry for research), 10 (entry for research), 11 (entry for research), 14 (entry for designation of exhibits), 2000 and July 19 (entry for research on <u>Jones</u> case), 21 (entries for preparing witness outlines), 26 (entries for work involving A. Rounds), 2000.

[23]Those entries are:  April 13 (entry for telephone conference with Mr. Odom), 19 (entry for telephone conference with Mr. Odom), 20 (entry for telephone conference with Mr. Odom), 2000, May 2 (entries for conference with B. Fletcher and trial prep), 3 (entry for trial prep), 10 (entry concerning correspondence), 2000, July 5, 2000 (entry for telephone conference with Mr. Odom), August 9, 2000 (entry for telephone conference with Mr. Newsome), September 21 (entry for trial prep), 23 (entry for trial prep), 2001 and October 3 (entry for telephone conference with Mr. Odom), 4 (entries for telephone conferences with Mr. Odom), 8, 9 (entries for research and trial preparation), 12 (entry for telephone conference with Ms. Rosen), 13, 16-23, 25, 2001.

trial would have reviewed those materials, but one who had been involved in the initial stages of the case could have done so much more quickly. Given Mr. Gallagher's limited role in the trial, it is appropriate to reduce by half his billings for familiarizing himself with the case before trial.[24] In total, plaintiff may recover for 495 hours of Mr. Gallagher's work.

That is not the end of the story, however, as there are also problems with the charges of the non-legal staff of Barlit Beck. The billing statement indicates that five legal assistants, one project assistant and four case assistants billed time to this case. Much of this work was unnecessary. Legal assistant Jodi Loper, for example, billed time on April 28, 2000 for editing the design of a document database that was created and maintained by others. Because plaintiff has not explained what value Ms. Loper added to the database, her time is not recoverable. Case assistant Sonia Rosa's billings are also not recoverable. On May 1 and 2, 2000, she billed 11 hours for organizing trial transcripts. The only transcripts she could have been organizing at that point were the transcripts of plaintiff's criminal trial, which are not so voluminous that they should have required a day and half to sort out. On October 25, 2001 and October 29, 2001, Ms. Rosa billed time for "Assist[ing] with trial preparation" and "Assist[ing] with trial," respectively. Because we cannot divine the nature of her work from these entries, plaintiff may not recover for this time. Plaintiff also cannot recover the fees billed by Kim Solorzano, another project assistant. Ms. Solorzano billed 1.5 hours to "Preparing war

---

[24]Those entries are: March 16-18, 21, 29, 2000, April 4-6 (except for the April 6 entry for research on Mr. Loftus), 8-11, 12 (entries concerning theory of the case), 13 (except the entry for telephone conference with Mr. Kamisar), 14, 17, 18 (entries for reviewing depositions), 19 (entry for conference with Ms. Smith), 20, 21 (except the entries relating to expert discovery), 23, 24 (except the entry for research concerning Mr. Zopf), 25 (entries for review of Mr. Newsome's deposition and database), 28 (entries for reviewing documents and telephone conference with Mr. Beck), 30, 2000 and May 1 (entries for conferences with Ms. Smith and Mr. Beck), 2 (entries for conference with Mr. Beck and review of key documents), 3 (entries for reviewing and organizing files and reviewing depositions and documents), 11 (entry for conference with Mr. Beck regarding malicious prosecution law), 18 (entry for reviewing 1994 reports from investigators), 2000.

room for trial" and 9.5 hours to "Assist[ing] trial team in returning to Court and office." Given the fact that another case assistant billed 14 hours to war room preparation, we do not see why Ms. Solorzano's efforts were also required for that task. Moreover, though plaintiff's lawyers may have needed help ferrying their trial materials to and from the courthouse, plaintiff has not explained why that help had to come from a person who charged $100.00 per hour. In short, none of Ms. Solorzano's time is recoverable.

The lion's share of the Bartlit Beck non-legal fees were billed by legal assistant Heidi Smith. There are two related and recurring problems with Ms. Smith's billing entries. The first is that many of the descriptions are too vague to enable us to determine what she was actually doing. Ms. Smith, for example, devoted large amounts of time to tasks described only as "miscellaneous trial prep," "services re trial preparation," "miscellaneous file organization" and "trial prep." It is impossible to determine from these vague descriptions whether the services Ms. Smith provided were necessary to the case or whether the time she spent on them was reasonable. Second, Ms. Smith did not bill separately for each task she performed, but aggregated the time she spent on the case into a daily total. Thus, even when the terse description is accompanied by detailed descriptions of other tasks, it is impossible to determine how much time was devoted to the unspecified trial preparation and how much time was devoted to the specifically described tasks. Because plaintiff has not demonstrated that the 409 hours Ms. Smith devoted to these vaguely described tasks were reasonable, he may not recover the fees she billed for doing so.[25] The remaining 225.75 hours billed

---

[25]The entries rejected for vagueness are: May 3-4, 8-9, 14, 16-17, 19, 24, 2000, June 1-2, 13-14, 19-20, 22-23, 2000, July 6, 10, 19-21, 24-27, 2000, August 7, 2000, November 15, 2000, January 18, 2001, September 13, 21, 26-28, 2001 and October 1-2, 4, 8-18, 20-26, 28-29, 2001.

by Ms. Smith are reasonable. Because defendants do not contest her $140.00 per hour billing rate, plaintiff may recover $31,605.00 (225.75 hours @ $140.00 per hour) for Ms. Smith's work.

Jessica Casey, who is identified as a case assistant, also billed a substantial number of hours to this case. Like Ms. Smith, Ms. Casey billed 249 hours to work described only as "trial prep" or "trial." Because plaintiff has not demonstrated that these time expenditures were reasonable, he may not recover for them.[26] The remaining 155.50 hours billed by Ms. Casey are reasonable. Because defendants do not contest her $100.00 per hour billing rate, plaintiff may recover $15,550.00 (155.50 hours @ $100.00 per hour) for Ms. Casey's work.

Finally, plaintiff seeks to recover fees for the services of Brian Fletcher, a Bartlit Beck project assistant. Mr. Fletcher was responsible primarily for organizing and updating the firm's files on this case and conducting offsite non-legal research. Mr. Fletcher billed 242.50 hours to these tasks over the life of the case, a reasonable amount of time for which plaintiff may recover. Mr. Fletcher's time is billed at $100.00, a rate defendants do not contest. Thus, plaintiff may recover $24,250.00 (242.50 hours @ $100.00 per hour) for his work.

We turn now to the billing rates that defendants do contest. Fee awards under section 1988 "are to be based on market rates for [the] services rendered." People Who Care v. Rockford Bd. Of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996) (internal quotation marks and citation omitted). "[An] attorney's actual billing rate for comparable work," is presumed to be the market rate. Id. The party seeking the fee bears the burden of proving the market rate for his work. Spegon, 175 F.3d at 554.

Defendants contend that the rates charged by Mr. Odom in 2001, $295.00 per hour, and by Messrs. Beck and Gallagher, $550.00 and $360.00 per hour, respectively, are not the market rates

---

[26]Those entries are: July 20-21, 24-27, 2000, September 14, 17, 19, 21, 24, 28, 2001 and October 1, 3, 5, 8-11, 15-19, 22-26, 29, 2001.

for the work they performed on this case.[27] Plaintiff, of course, disagrees. These are necessarily the lawyers' market rates, he contends, as they are the rates the lawyers actually charged to their clients. In this context, however, the term market rate does not mean the rate charged by the lawyers, but the rate charged by lawyers of comparable skill who are *"engaged in the type of litigation in which the fee is being sought."* Cooper v. Casey, 97 F.3d 914, 920 (7th Cir. 1996) (emphasis in original). Thus, plaintiff may only recover the rates he seeks if he demonstrates that they are the prevailing market rates for lawyers who practice civil rights litigation in the Chicago area.

Plaintiff did not submit any evidence about the prevailing rates for civil rights litigators in this area. Defendants, however, submitted the affidavits of Terence J. Moran and John B. Murphey, two experienced civil rights litigators who are familiar with the rates charged in the Chicago area for such work. Mr. Moran, who has been litigating civil rights cases for nearly twenty years, states that $300.00 is a reasonable hourly rate for a practitioner with comparable experience. (Defs. & Intervenor's Resp. Pl.'s Mot. Att'ys' Fees, Ex. B.) Mr. Murphey, who has been doing civil rights work for more than twenty years, says that reasonable hourly rates for practitioners with comparable experience range from $225.00 to $350.00 per hour. (Id., Ex. C.)

Given this evidence, the Court finds that the $295.00 rate requested for Mr. Odom is a bit high. Given Mr. Odom's ten years of experience as a civil rights litigator and his skillful performance in this case, however, plaintiff may recover $270.00 per hour for his services in 2001.

The rates charged for Ms. Gibbs-Cunningham's and Ms. Tucker's time are also too high. Though plaintiff tells us nothing about Ms. Gibbs-Cunningham's education or experience, we assume from the $45.00 per hour difference in their billing rates that she has substantially less

---

[27]Defendants do not challenge the rates charged by the other lawyers and non-legal staff. Any objections they may have to those rates are, therefore, waived.

experience than Mr. Odom. If civil rights litigators with twenty or more years of experience charge roughly $300.00 per hour, a novice in the field should command no more than $175.00. Ms. Tucker, according to Sullivan's Law Directory, was admitted to practice in Illinois in 2000. When she was a law student in 1999, the Odom firm charged $130.00 per hour for her time. In 2000, her first year of practice, Ms. Tucker's time was billed at $190.00 per hour and in 2001, her second year of practice, it was billed at $210.00. Given her lack of experience, $90.00 per hour is a reasonable rate for Ms. Tucker's work as a law clerk and $125.00 per hour is a reasonable rate for her work in 2000 and 2001.

Mr. Beck's and Mr. Gallagher's rates must also be reduced. Though their work may be worth every penny of their $550.00 and $360.00 hourly billing rates to the corporate clients they typically represent, defendants' evidence shows that their considerable talents would not fetch nearly as much on the civil rights litigation market. Rather, the most a civil rights practitioner with Mr. Beck's trial skills and experience could charge is $350.00 per hour. But Mr. Beck is not a civil rights litigator. In fact, it appears that this case was the first civil rights matter he ever tried. Balancing his formidable litigation skills, which are transferrable to the civil rights context, with his unfamiliarity with the substantive law, yields a reasonable hourly rate of $325.00 for Mr. Beck. Mr. Gallagher, who also concentrates on commercial matters and has practiced for only five years, would garner substantially less. Given his limited experience, the Court finds that an hourly rate of $175.00 is reasonable for Mr. Gallagher.

Multiplying the reasonable hourly rates by the reasonable number of hours yields a lodestar of $822,136.80 (**$47,593.75 for Mr. Bowman** [190.375 hours x $250.00 per hour] + **$50,562.50 for Ms. Snyder** [202.25 hours x $250.00 per hour] + **$376,033.55 for Mr. Odom** [$203,472.50 (830.5 hours x $245.00 per hour) + $172,561.05 (639.115 hours x $270.00 per hour)] + **$66,375.75 for Ms.**

**Gibbs-Cunningham** [379.29 hours x $175.00 per hour] + **$11,091.25 for Ms. Tucker** [$8685.00 (96.5 hours x $90.00 per hour) + $2406.25 (19.25 hours x $125.00 per hour)] + **$112,450.00 for Mr. Beck** [346 hours x $325.00 per hour] + **$86,625.00 for Mr. Gallagher** [495 hours x $175.00 per hour] + **$31,605.00 for Ms. Smith** [225.75 hours x $140.00 per hour] + **$15,550.00 for Ms. Casey** [155.5 hours x $100.00 per hour] + **$24,250.00 for Mr. Fletcher** [242.5 hours x $100.00 per hour]).[28]

That does not end the matter, however. A fee award under section 1988 is not comprised solely of the cost of attorney time reflected in the lodestar. Rather, our court of appeals has said, that a reasonable attorney's fee also includes "expenses that are distinct from . . . statutory costs or the costs of the lawyer's time reflected in his hourly billing rates," and includes such things as postage, long-distance calls, travel, and computerized legal research. Heiar v. Crawford County, 746 F.2d 1190, 1203 (7th Cir. 1984); Haroco, Inc. v. American Nat'l Bank & Trust Co., 38 F.3d 1429, 1440 (7th Cir. 1994) (characterizing computerized legal research expenses as attorneys' fees not costs). Plaintiff seeks to recover more than $20,000.00 in expenses incurred by the Odom firm and more than $90,000.00 incurred by Bartlit Beck.[29]

Plaintiff has provided virtually no support for, or explanation of, the Odom firm's expenses. The firm, for example, spent $4,400.00 on investigators during the course of the case, an amount that is verified by invoices. The invoices, however, describe the services rendered only as "investigation

---

[28]In his reply brief, plaintiff argues that the lodestar should be enhanced for the "extraordinary results" his counsel obtained. (See Pl.'s Reply Br. Supp. Mot. Att'ys' Fees at 10.) Because plaintiff did not raise this argument in his opening brief, and defendants could not respond to it, the argument is waived.

[29]The Bartlit Beck expense request includes the expenses incurred by Mr. Bowman and Ms. Snyder of the MacArthur Justice Center. As we noted above, none of Mr. Reichel's expenses are recoverable.

hours." Absent further explanation of the work performed, we cannot say that these expenses are reasonable. Plaintiff may not, therefore, recover for them.

Nor may he recover for the photocopying, computerized legal research, postage, facsimile transmission, courier service or taxi cab costs incurred by the Odom firm. The only documentation submitted in support of those expenses are "Client Cost Logs" on which notations like "messenger" "copies" or "postage" and corresponding dollar amounts appear. The cost logs do not say what was copied, faxed or mailed or why. The Court cannot determine whether any of these expenses were necessary or reasonable. As a result, plaintiff may not recover for them.

Plaintiff also may not recover the expenses incurred by the Odom firm attorneys in connection with their trips to St. Louis and Minneapolis. Though plaintiff says that Mr. Odom made the latter trip to obtain information for the post-trial motions, he has not explained why a personal visit, as opposed to a telephone call, was necessary. The former trip, which was made to interview Dennis Emerson, was necessary, but plaintiff did not submit any invoices or receipts to substantiate the travel expenses requested. Because there is no documentation of the costs associated with the St. Louis trip, plaintiff may not recover for them.[30]

Plaintiff also may not recover for Mr. Odom's lodging expenses during the trial. Though it may have been more convenient for Mr. Odom to stay downtown, plaintiff has not shown that it was necessary for him to do so. Defendants are not, therefore, responsible for those costs.

Finally, plaintiff seeks reimbursement for the $7,300.00 the Odom firm advanced to expert witness Dr. Thomas Streed and the $1,525.00 it advanced to expert witness Dr. Gary Wells. The

---

[30]Ms. Tucker accompanied Mr. Odom on the trip to St. Louis, though it was not necessary for her to do so. Thus, even if there were adequate documentation of her expenses for that trip, plaintiff would not be able to recover for them.

Supreme Court has held, however, that there must be explicit statutory authority for the recovery of expert witness fees before they can be awarded under section 1988. West Virginia Univ. Hosp. v. Casey, 499 U.S. 83, 86-87, 102 (1991). The Civil Rights Act of 1991 provides explicit authority for the recovery of expert witnesses fees in section 1981, section 1981a and Title VII cases, but not in section 1983 cases. See Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified in 42 U.S.C. §§ 1988, 2000e-5(k)). Thus, the Odom firm's expert witness expenses are not recoverable.

In sum, plaintiff has not demonstrated that any of the Odom firm expenses are recoverable as part of a reasonable attorney's fee under section 1988. Consequently, plaintiff may not recover for any them.

We turn now to the Bartlit Beck expense request. Like the Odom firm, Bartlit Beck seeks to recover the money it spent on expert witness fees and expenses. As discussed above, however, such expenses are not recoverable in a section 1983 case. Consequently, plaintiff's request for the $22,691.47 Bartlit Beck spent on experts is denied.

Plaintiff also cannot recover Bartlit Beck's costs for long-distance telephone calls, postage, facsimile transmissions, messenger services, in-house photocopying, computerized legal research,[31] overtime meals and transportation, supplies and secretarial overtime. Though these sorts of expenses are ordinarily recoverable, they are insufficiently documented in this case. The only support plaintiff submitted for these expenses are computer print-outs and invoices that say nothing more than the date and amount of each expense. Certainly, plaintiff's counsel was not required to compile a list of every sheet of paper photocopied, faxed or sent by messenger and justify each decision to

---

[31]Included under the heading of computerized legal research is an invoice for $668.63 for section 1983 litigation books ordered by Mr. Patterson. Even if these books were necessary to the case, which plaintiff has not shown, he still could not recover for them because there is no evidence that these books could not be obtained from a local law library.

do so. But we cannot make a reasonableness determination without some explanation of: (1) who was called; (2) what was mailed, faxed or messengered and to whom; (3) what was copied and why; (4) what was researched;[32](5) what supplies were used and why they were necessary; and (6) why overtime meals, transportation and secretarial work were required. Because plaintiff has not provided even the most general explanation of the necessity of these expenses, he may not recover for them.[33]

Similarly lacking is an explanation for most of the outside copying services used by the firm. Only $1,693.72[34] of plaintiff's $10,299.25 outside copy service request is supported by documents that show the materials copied were necessary to the case. Accordingly, plaintiff's recovery for outside copying will be limited to that amount.

Bartlit Beck's travel expenses are also not recoverable. The bulk of this $3,000.00 expense was charged by Mr. Beck and Mr. Gallagher immediately before and during the trial. Presumably,

---

[32]Plaintiff argues that the descriptions of legal research contained in the attorney time records substantiate his request for computerized legal research expenses. The Court is not, however, obligated to comb through the Bartlit Beck attorney time records in an attempt to match the computerized legal research charges to the research topics therein described. Plaintiff's failure to provide even a general explanation of the electronic research performed by the Bartlit Beck lawyers dooms his request.

[33]In his reply brief, plaintiff says that he is willing to submit further documentation, if the Court finds that his fee and cost requests are insufficiently supported. (See Pl.'s Reply Br. Supp. Mot. Att'ys' Fees at 12 n.9.) Plaintiff may be willing to make further submissions, but the Court is not willing to entertain them. Plaintiff's one and only opportunity to document his fee and cost requests has now passed. The Court will not consider any supplemental submissions on this motion or motions to reconsider that are based on plaintiff's failure to tender adequate support for his requests in the first instance.

[34]This number represents $269.75 (April 22, 1997 check from MacArthur Justice Center to Record Copy Services) + $100.80 (October 30, 1997 invoice to MacArthur Justice Center from Record Copy Services) + $1,185.55 (October 30, 1997 invoice to MacArthur Justice Center from Record Copy Services) + $4.67 (November 17, 1997 check to John Amberg from MacArthur Justice Center) + $92.00 (September 28, 1998 letter to Locke Bowman from Gordon Vaughan) + $40.95 (January 13, 1999 letter to Locke Bowman from Gordon Vaughan).

though the print-out does not say, these charges were for the rental of hotel rooms near the courthouse. Because plaintiff has not demonstrated that it was necessary for the lawyers to stay in hotels during the trial, he may not recover the expenses they incurred to do so. The only other travel expenses are a $113.75 charge attributed to expert witness Michael Zopf and a $109.40 reimbursement made to a witness who traveled to Chicago for a deposition that was canceled. The former charge, an expert witness expense, cannot be shifted to defendants. Nor can the latter, which was incurred solely because of poor scheduling by plaintiff's counsel.

Barlit Beck also spent nearly $900.00 to rent a van "for transportation to and from court." Because plaintiff has not explained why this expense was necessary, he cannot recover for it.

Plaintiff also seeks to recover $393.00 in non-taxable court reporter fees paid by Bartlit Beck: $150.00 for ASCII disks of depositions, $25.00 for a condensed deposition transcript, $50.00 for a court reporter's appearance at a scheduled telephone deposition and $168.00 for unspecified court reporter services.[35] The charges for ASCII disks are reasonable in the increasingly computer-dependent world of litigation. They are, thus, recoverable. Plaintiff has not, however, explained: (1) why it was necessary to order a condensed transcript of Mr. Zopf's deposition as well as a regular transcript and an ASCII disk; (2) who was responsible for the cancellation of the telephonic deposition for which the court reporter appearance fee was charged; or (3) what services were provided for the $168.00 charge. Accordingly, plaintiff's recovery for nontaxable court reporter fees will be limited to $150.00, the cost of the ASCII disks.

Bartlit Beck also spent nearly $3,200.00 on the exhibit boards they used during the trial. The vendor charged $800.00 for creating the exhibit graphics, $18.00 for color laser prints, $1,655.74

---

[35]The original invoice for the $168.00 charge may well specify the services rendered, but the quality of the copy given to the Court is so poor that it is undecipherable.

-21-

for various services on a "rush" basis, $49.68 for messenger service, $54.60 for cab fare and $36.15 for working meals. Plaintiff has not explained why these exhibits had to be produced on an expedited basis or what portion of the $1,655.74 charge is the premium for that service. Because plaintiff has not demonstrated that expedited service was necessary, he may recover only $818.00, the amount charged by the vendor for creating the graphics and the color laser prints for the exhibit boards.[36]

Plaintiff also seeks to recover the $6,788.75 that Bartlit Beck spent on the prison cell model. That figure represents not only the $6,500.00 that the vendor charged to build, assemble and disassemble the model, but $288.75 for access to the freight elevator in Bartlit Beck's building. Plaintiff has provided no explanation for the freight elevator charges. Because we do not know whether those charges had to be incurred or were incurred solely for the convenience of Bartlit Beck, plaintiff cannot recover for them. Plaintiff's recovery for the cell model, therefore, will be limited to $6,500.00.[37]

The last troublesome aspect of the Bartlit Beck expense submission concerns the charges for investigators. With two exceptions that we will discuss separately, the investigator invoices do not describe the services that were rendered for the fees charged. Without those descriptions, there

---

[36]Defendants argue that the $800.00 charge for the creation of the exhibit board graphics is excessive and should be disallowed. The Court disagrees. The use of exhibit boards is an extremely effective method of presenting evidence to a jury, and thus, the expense to create them is a necessary one. Moreover, a total expense of $818.00 for ten 3'x5' exhibit boards is reasonable.

[37]Defendants contend that no recovery should be allowed for this exhibit because it was unnecessary. The Court disagrees. Though viewed only briefly by the jurors, the exhibit helped them evaluate plaintiff's testimony about the hardships he endured in prison, the crux of plaintiff's damages case. Thus, the money spent on the cell exhibit was a reasonable expense for which plaintiff may recover.

is no way to determine whether the charges are reasonable. Thus, plaintiff may not recover for the $4,203.25 of unspecified investigation services rendered by Data Researchers, Inc. and Rene Brown.

Plaintiff may, however, recover the $365.00 his counsel paid to Top Investigative Services, Inc. for serving summonses on two defendants. He may also recover, to the extent he can substantiate the expenditures, any fees his counsel paid to other private process servers in connection with this case.[38] Plaintiff seeks a total of $1,228.50 for other private process servers. He cannot, however, recover the $175.00 paid to BVL Process Servers on March 3, 1998 because he has no documentation for that charge. He also cannot recover the $350.00 paid to LaSalle Process Servers on July 1, 1998 because the documentation for that charge says that the money was paid for "service of summonses in handguns suit." The remaining charges are properly documented and reasonable. Plaintiff may, therefore, recover a total of $1,068.50 for private service of process in this case.

Plaintiff's last expense request is for the $1,410.00 Bartlit Beck spent to rent the audio-visual equipment used at trial. That expense, which is reasonable and properly documented, is recoverable.

In sum, plaintiff has demonstrated that: (1) the audio-visual equipment rental expense; (2) a portion of the demonstrative exhibit expenses; (3) the court reporter charges for ASCII disks; (4) the charges for private process servers; and (5) a portion of the outside copying charges were reasonable and necessary to the case. Accordingly, plaintiff may recover a total of $11,640.22 in expenses incurred by Bartlit Beck.

In total, then, plaintiff can recover $833,777.02 in section 1988 fees and expenses ($822,136.80 in fees + $11,640.22 in expenses).

_____

[38]Though plaintiff included them in his bill of costs, such fees are not taxable as costs. See Collins v. Gorman, 96 F.3d 1057, 1059 (7th Cir. 1996). Thus, we will consider the private process server fees in connection with plaintiff's fee petition, not his bill of costs.

We turn now to plaintiff's bill of costs. The costs that are recoverable under Federal Rule of Civil Procedure ("Rule") 54(d) are set forth in 28 U.S.C. § 1920, which provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The Seventh Circuit has interpreted this statute to include costs for deposition transcripts and photocopies. Cengr v. Fusibond Piping Sys., Inc., 135 F.3d 445, 454 (7th Cir. 1998). To award costs under Rule 54(d), we must determine that there is statutory authority for the costs requested and that the costs are reasonable and were necessary to the litigation. Id.

The first problem with plaintiff's bill of costs is the request for court reporter fees. According to Local Rule 54.1:

> the costs of [a] transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed unless some other rate was previously provided for by order of court. Except as otherwise ordered by the court, only the cost of the original of such transcript or deposition together with the cost of one copy each where needed by counsel and, for depositions, the copy provided to the court shall be allowed.

See Cengr, 135 F.3d at 456 (noting that " the Judicial Conference rates apply to deposition charges by private court reporters" as well as transcript charges by official court reporters); VI JUDICIAL CONFERENCE OF THE UNITED STATES, GUIDE TO JUDICIARY POLICIES & PROCEDURES, COURT REPORTERS MANUAL, ch. 20, pt. 20.3 (1998) (setting forth the following prices per page for transcripts:

| Type of Transcript | Original | Copy to Each Party | Each Add'l Copy to Same Party |
|---|---|---|---|
| Ordinary | $3.00 | $.75 | $.50 |
| Expedited | $4.00 | $.75 | $.50 |
| Daily | $5.00 | $1.00 | $.75 |
| Hourly | $6.00 | $1.00 | $.75). |

Plaintiff has not submitted the court reporters' invoices for James Jordan's deposition, Stephen Meagher's deposition, Terrence Moisan's deposition, Michael Zopf's deposition or for any of the hearing or trial transcripts. Without the invoices, we cannot determine whether the charges comport with the local rule. Because plaintiff has not established that they do, he may not recover those costs. In total, plaintiff may recover $9,208.40 for court reporter fees.

The next problem is with plaintiff's request for the cost of copying pleadings and discovery requests. Though those copy costs are recoverable under the statute, plaintiff has requested reimbursement for too many copies. He seeks costs for four copies of pleadings – the original and one filed with the Court, one copy for opposing counsel and one copy for plaintiff – and two copies of discovery – one copy for opposing counsel and one copy for plaintiff. Original pleadings or discovery requests should not, however, be counted as copies. Thus, plaintiff may recover $864.95 for making three copies of each original pleading – one for the Court, one for defense counsel and one for plaintiff – and $38.10 for making one copy of each discovery request.

Plaintiff also requests reimbursement of $806.10[39] for copying the documents he produced in discovery and $730.20 for copying plaintiff's trial exhibits. Those costs, which are authorized by the statute, are reasonable and were necessary to the case. Plaintiff may, therefore, recover for them.

---

[39]Plaintiff actually requests $807.00, but the cost of copying 5,374 pages at $.15 per page, which is the basis for plaintiff's request, is $806.10.

Finally, plaintiff seeks $3,906.57 for enlarging certain trial exhibits, the only cost request to which defendants object. That sum is excessive, they say, because they spent less then a third of that amount enlarging their exhibits for trial. It may be, as defendants contend, that the enlargement cost is too high. But there is an even more fundamental problem with this request: plaintiff has not submitted any documentation to support it. Because we do not know how much plaintiff was charged for any enlargement or how many enlargements he obtained or used, we cannot say that this was a necessary and reasonable cost. Consequently, plaintiff may not recover for it.

In total, plaintiff may recover $2,439.35 ($903.05 [$864.95 for pleadings and $38.10 for discovery requests] + $806.10 for documents produced in discovery + $730.20 for copying trial exhibits) by plaintiff for copying papers necessarily obtained for use in the case.

Plaintiff also seeks to recover the witness fees paid by his lawyers. There is statutory authority for these costs, but plaintiff's documentation is once again lacking. In particular, plaintiff has submitted no support for his request for the witness fees paid to: Frank Laverty, Theatrice Patterson, Anthony Rounds (July 26, 2000 and October 9, 2001 payments), Lillie Rounds and Fred Stone (March 30, 1998 payment). Accordingly, plaintiff may recover only $615.00 for witness fees.

In sum, plaintiff can recover $12,382.75 in costs ($120.00 filing fee + $9,208.40 for court reporter fees + $2,439.35 for photocopies + $615.00 for witness fees) under Rule 54(d).

## Conclusion

For the reasons set forth above, plaintiff's motion for an award of attorneys' fees and expenses and his bill of costs are granted in part and denied in part. Judgment will be entered in plaintiff's favor on the fee petition in the amount of $833,777.02 and costs will be taxed in the amount of $12,382.75. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

**DATED:** *May 9, 2002*